IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SURY NAYELI RODAS TREJO, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-26-3849 |
| TODD BLANCHE, et al., | * | |
| Respondents. | * | |
| | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Petitioner Sury Nayeli Rodas Trejo's Petition for Writ of Habeas Corpus (ECF No. 1). The Petition is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Petition.

## I. BACKGROUND

Petitioner Sury Nayeli Rodas Trejo is a citizen and native of Honduras. (Pet. Writ Habeas Corpus ["Pet."] ¶ 12, ECF No. 1). She last entered the United States with her biological mother on September 9, 2017. (Id. ¶ 17). Rodas Trejo, who was just sixteen years old at the time, was apprehended, placed in removal proceedings, and then released under an Order of Release on Recognizance ("OREC") on October 9, 2017. (Id.; Resp. Pet. Writ Habeas Corpus ["Resp."] at 8, ECF No. 8; OREC at 1, ECF No. 8-1).[1] As conditions

[1] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

of release, the OREC required that Rodas Trejo not associate with individuals known to be involved in criminal activity, that she "not commit any crimes or be associated with any criminal activity," that she cooperate with Immigration and Customs Enforcement ("ICE") in applying for and obtaining travel documents, and that she participate in a supervised release program. (OREC at 2–3). Rodas Trejo and her mother later applied for asylum, but an Immigration Judge denied their request on July 8, 2025. (Pet. ¶ 18). Rodas Trejo and her mother filed an appeal, which remains pending. (Id.).

On July 27, 2026, the State of Maryland filed charges against Rodas Trejo for two misdemeanor offenses: theft of less than $100 and fraudulent credit card use of less than $100. (Resp. at 8; State Ct. Dkt. at 2, ECF No. 8-2; see Pet ¶ 19). According to Rodas Trejo, a former employer filed a Statement of Charges against her for her inadvertent use of the employer's credit card, which was stored as a payment method on Rodas Trejo's phone, to purchase a $12 meal. (Pet. ¶ 19). The state court scheduled a hearing for September 29, 2026. (State Ct. Dkt. at 2). Rodas Trejo alleges that the prosecutor entered a nolle prosequi[2] after concluding "that the facts of the case did not rise to the level of a criminal offense." (Pet. ¶ 19; see also Def. Trial Summ., ECF No. 1-1 (showing nolle prosequi verdict as to both charges)). Rodas Trejo states that she was awaiting the court's entry of the nolle

[2] A nolle prosequi is "[a] legal notice that a lawsuit or prosecution has been abandoned." Nolle Prosequi, Black's Law Dictionary (12th ed. 2024). It is "an official declaration by the State announcing that it will not pursue the charges in a particular charging document." In re Darren M., 747 A.2d 612, 616 (Md.Ct.Spec.App. 2000). "In effect, [a] nolle prosequi wipes out the charges pending against the defendant and precludes the State from prosecuting the defendant under the charging document that was nolle prossed." Id. (first citing Hooper v. State, 433 A.2d 86, 89–90 (Md.Ct.Spec.App. 1982); and then citing Blackston v. State, 613 A.2d 1005, 1006 (Md.Ct.Spec.App. 1992)).

prosequi order when ICE arrested her at the state courthouse "without a warrant or . . . any sort of legal cause or justification." (Pet. ¶ 20). ICE detained Rodas Trejo at the Baltimore ICE Facility and later transferred her to the Caroline Detention Facility in Virginia, where she currently remains. (Id.; Resp. at 8).

Rodas Trejo filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 while detained in Baltimore on September 29, 2026. (ECF No. 1). Respondents Todd Blanche, Markwayne Mullin, Todd M. Lyons, and Robert Gaudian (collectively "Respondents" or "the Government") filed a Response on October 9, 2026, (ECF No. 8), and Rodas Trejo filed a Reply on October 13, 2026, (ECF No. 9).

## II. DISCUSSION

### A. Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

### B. Analysis

Rodas Trejo argues that her arrest and continued detention violate her Fifth Amendment procedural and substantive due process rights as well as Section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226. (Pet. ¶¶ 30–51). She seeks immediate

release as relief. (Id. ¶ 25). The Government responds that ICE arrested Rodas Trejo lawfully under a Warrant for Arrest of Alien. (Resp. at 8; Warrant, ECF No. 8-3). As the basis for her detention, Respondents argue that ICE had discretionary authority under 8 U.S.C. § 1226(b) to revoke Rodas Trejo's OREC and bring her into custody because she violated her conditions of release when she was charged with theft. (Resp. at 9–10). Respondents further contend that Rodas Trejo's detention is mandatory under 8 U.S.C. § 1226(c) and the Laken Riley Act ("LRA") because she is inadmissible under 8 U.S.C. § 1182(a)(6)(A) and was charged with theft. (Resp. at 11–12).[3] Finally, the Government argues that immediate release is inappropriate and that the proper remedy is a Joseph hearing in the Immigration Court under Matter of Joseph, 22 I&N Dec. 799 (BIA 1999). (Resp. at 12–13). The Court will address each argument in turn.

**1. Rodas Trejo's Detention Under 8 U.S.C. § 1226(c)**

Respondents argue that 8 U.S.C. § 1226(c) permits Rodas Trejo's mandatory detention. (Resp. at 11). For a noncitizen to be lawfully detained under a certain statute, the requirements of that statute must be fulfilled at the time that the relevant detention determination is made. See Santos Gomez v. Guadian, No. GLR-26-3078, 2026 WL 2546049, at *4 (Aug. 28, 2026) (finding that an improper warrantless arrest invalidated detention pursuant to § 1226(a) where warrant was explicitly required under the statute).

[3] Rodas Trejo anticipated that Respondents would invoke the mandatory detention provision under 8 U.S.C. § 1225(b)(2) as the basis for her detention. (Pet. Writ Habeas Corpus ["Pet."] ¶ 24, ECF No. 1). Acknowledging the United States Court of Appeals for the Fourth Circuit's recent holding in Lopez Garcia v. Guadian, No. 25-7044, 2026 WL 2661092 (4th Cir. Sep. 10, 2026), however, Respondents reject that assumption, (Resp. Pet Writ Habeas Corpus ["Resp."] at 4, 8, ECF No. 8).

Here, the relevant time at issue is the moment when Respondents revoked Rodas Trejo's OREC and determined that she was subject to detention under § 1226(c), as prior to the revocation of her OREC, she still ostensibly maintained the liberty interest that she now challenges the loss of.

Section 1226(c) mandates the detention of any noncitizen who has committed one of the enumerated offenses or who has been identified as involved in terrorist activities. 8 U.S.C. § 1226(c). The LRA amended § 1226(c) on January 29, 2025. Laken Riley Act, Pub. L. 119-1, § 2, 139 Stat. 3 (2025). As a result, the relevant subsection, § 1226(c)(1)(E), mandates the detention of any noncitizen who:

> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

8 U.S.C. § 1226(c)(1)(E).

It is undisputed that the first requirement is fulfilled, as Rodas Trejo is inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for having entered the United States without the proper travel documents. (Notice Appear at 1, ECF No. 1-3). What is relevant to this Court's analysis is § 1226(c)(1)(E)'s second requirement, that an individual "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts <u>which constitute the essential elements</u> of any . . . theft." 8 U.S.C. § 1226(c)(1)(E)(ii)

(emphasis added). As § 1226(c)(2) clarifies, the definition of the term "theft" is that of the jurisdiction in which the acts occurred, which, in this case, is Maryland.

The Court first turns to the plain language of the statute. It is immediately apparent that the key language in the statute that is applicable to Rodas Trejo is the present tense requirement "is charged with," id. § 1226(c)(1)(E)(i) (emphasis added), as she was not arrested or convicted of theft and has not admitted to the essential elements of theft under the Maryland statute. Md. Code, Crim. Law § 7-104 (defining theft under Maryland law). "By using the present tense, § 1226(c)(1)(E)(ii) establishes that detention is mandatory only so long as the charges either remain pending or are resolved in a way that triggers one of the other clauses of the statute." Helbrum v. Williams Olson, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *5 (S.D.Iowa Sep. 30, 2025). Thus, when "criminal charges against someone have been dropped, we would not continue to say the person 'is charged with' that crime." Id. As the United States District Court for the Southern District of Iowa explained recently:

> [Section] 1226(c)(1)(E)(ii) recognizes that a person "is charged with" a crime (present tense) only until those charges are resolved. If the resolution is a conviction ("is convicted of") or involves the person making some other admission of guilt ("admits having committed" or "admits committing acts which constitute the essential elements of"), then § 1226(c)(1)(E)(ii) continues to make detention mandatory. By contrast, based on the recurring use of the present tense for each stage of the criminal process, the statute no longer requires mandatory detention when charges are resolved via acquittal or dismissal and none of the other clauses apply.

Id. at *6.

Rodas Trejo appeared for a trial at the Carroll County District Court for a hearing at 8:45 a.m. on September 29, 2026, at which point the State's Attorney nolle prossed Rodas Trejo's charges.[4] (State Ct. Dkt. at 2; Def. Trial Summ.). At 8:55 a.m., ICE officers arrested Rodas Trejo. (Pet. ¶ 2). By 9:29 a.m., the state court entered the nolle prosequi into the record. (Def. Trial Summ.). The instant Petition, along with the Trial Summary confirming that all charges had been nolle prossed, was filed at 11:50 a.m., and Respondents, through counsel, received notice of the filing from the Court at 12:01 p.m. (Pet'r's Reply Mem. L. Supp. Pet. Habeas Corpus ["Reply"] at 3 n.3, ECF No. 9). But despite all the charges against Rodas Trejo having been dropped, and Rodas Trejo providing notice of the nolle prossed charges to Respondents, ICE officers officially revoked her OREC and booked her into immigration custody at 3:19 p.m. (Notice Custody Determination, ECF No. 8-4).

At the time Rodas Trejo was arrested and taken into immigration custody, she was no longer charged with theft—the moment that the State's Attorney entered the nolle prosequi onto the record, that charge was permanently dropped. See Md. Rule 4-247(a) ("The State's Attorney may terminate a prosecution on a charge and dismiss the charge by

[4] It is unclear at what time the State's Attorney entered the nolle prosequi, as it was not until 9:29 a.m. that the court issued the Trial Summary memorializing the State's dismissal of the charges. (Def. Trial Summ., ECF No. 1-1). Rodas Trejo states that she was detained "as she was awaiting the entry of the order of nolle prosequi by the District Court of Maryland judge in the pending case against her." (Pet. ¶ 20). The Court infers from this statement that the State's Attorney had nolle prossed the case by 8:55 a.m., the time at which Rodas Trejo alleges ICE arrested her. (Pet. ¶ 2). Respondents do not propose any other sequence. (See generally Resp.). The Court would, however, reach the same conclusions in this case even if the sequence of events between 8:45–9:29 a.m. occurred in a different order.

entering a nolle prosequi . . . ."); Hairston v. State, No. 611 Sep. Term, 2017, 2018 WL 871505, at *3 (Md.Ct.Spec.App. Feb. 12, 2018) (explaining that "[d]ecisions about whether to dismiss charges . . . are uniquely within the State's broad prosecutorial authority," and "[e]ntry of nol pros 'is generally within the sole discretion of the prosecuting attorney'" (quoting State v. Ferguson, 98 A.3d 433, 439 (Md.Ct.Spec.App. 2014))); see also In re Darren M., 747 A.2d 612, 616 (Md.Ct.Spec.App. 2000) ("A nolle prosequi is an official declaration by the State announcing that it will not pursue the charges in a particular charging document. In effect, the nolle prosequi wipes out the charges pending against the defendant and precludes the State from prosecuting the defendant under the charging document that was nolle prossed." (citation omitted)). Hours later, when ICE officers conducted the custody determination, the fact that Rodas Trejo had no pending charges should have prompted the officers to release her, but instead, they revoked her OREC and booked her into immigration detention. (Notice Custody Determination).

The Court accordingly finds that Rodas Trejo's detention under § 1226(c) has been improper from the start. Had Respondents detained Rodas Trejo in the days or weeks leading up to her court date, her detention under § 1226(c) would have been proper, as she would have still been charged with theft at the time of the custody determination. But waiting until the day of her court date and not booking her into immigration detention until after the charges were nolle prossed renders her detention unlawful ab initio. The LRA mandates the detention of certain noncitizens presently charged with certain offenses, Laken Riley Act § 2, but "Congress did not . . . make detention mandatory for anyone who 'was charged with' one of those offenses (past tense) but had the charges dismissed without

a conviction or some other admission of guilt. Had this been Congress's intent, it surely knew how to find the right words." Helbrum, 2025 WL 2840273, at *7.

Respondents argue that the proper relief here is for Rodas Trejo to seek a Joseph hearing in the Immigration Court. (Resp. at 12–13). A Joseph hearing, in the immigration detention context, is an opportunity for a noncitizen to contest the legality of mandatory detention under § 1226(c). See Matter of Joseph, 22 I&N Dec. at 799; Demore v. Kim, 538 U.S. 510, 514 n.3 (2003).

Until the LRA was enacted in 2025, mandatory detention of criminal noncitizens under § 1226(c) required that an individual be convicted of an enumerated offense that resulted in removability under § 1182(a)(2) or § 1227(a)(2).[5] See Nielsen v. Preap, 586 U.S. 392, 399 (2019). Typically, convictions are intertwined not only with the individual's detention, but also the result of the immigration proceedings, as the "underlying merits determination" of removability may establish whether detention itself is proper. Matter of Joseph, 22 I&N Dec. at 800. "The relevant question in a Joseph hearing is whether the [Department of Homeland Security ("DHS")] is substantially unlikely to prove [a noncitizen's removability under a statute] that would justify mandatory detention." Matter of Davey, 26 I.&N. Dec. 37, 41 (BIA 2012) (citing Matter of Joseph, 22 I&N Dec. at 800).

[5] The term "conviction," in immigration law, is a term of art, as there are many case dispositions that are not typically considered convictions in other contexts that qualify as convictions in the immigration context. The statutory language in 8 U.S.C. §§ 1226(c)(1)(A)–(C) references "having committed any [enumerated] offense," id., however, pre-LRA "mandatory-detention cases [did] involve convictions," and the "rare" cases of mandatory detention without a conviction related to individuals detained under the terrorism provision at § 1226(c)(1)(D), Nielsen v. Preap, 586 U.S. 392, 399 (2019).

The purpose of a Joseph hearing, thus, has typically been an opportunity for an individual to contest whether the disposition of his criminal case qualifies as a conviction for immigration purposes, or whether the crime that he was convicted of qualified as a predicate offense. See Demore, 538 U.S. at 514 n.3. Compare Matter of Joseph, 22 I&N Dec. at 808 (finding that it was substantially unlikely that the crime of conviction would qualify as an aggravated felony, resulting in noncitizen not being subject to mandatory detention), with In Re Kotliar, 24 I.&N. Dec. 124, 127 (BIA 2007) (finding "that the DHS is [not] substantially unlikely to establish that the respondent's convictions would support a charge of removability under [§ 1227](a)(2)(A)(ii)," resulting in noncitizen being properly subject to mandatory detention).

Now, following the LRA, Joseph hearings should serve an analogous purpose. If the Government intends to detain a noncitizen under § 1226(c)(1)(E) and require the noncitizen to pursue a Joseph hearing to potentially obtain release, the Government should, at minimum, allege facts that could demonstrate that the noncitizen could somehow be subject to detention under that statute. Prior to the LRA, there was no basis for detaining an individual under 8 U.S.C. §§ 1226(c)(1)(A)–(C) who had not been convicted of any offense and then requiring that individual to seek a Joseph hearing.[6] By the same logic, there is no basis for detaining an individual under § 1226(c)(1)(E) who has no pending criminal charges and then requiring that individual to seek a Joseph hearing.

[6] Though this may have happened before, the Court has been unable to find a single case where that occurred.

As soon as Respondents became aware of the fact that all charges against Rodas Trejo had been nolle prossed, their officers should have immediately ceased any attempts to classify her detention as mandatory under § 1226(c) and instead should have recognized that she could only be subject to discretionary detention under § 1226(a). Because Rodas Trejo's detention under § 1226(c) was contrary to law from the moment Respondents purported to detain her under that statute, the Court will not require her to pursue a Joseph hearing.

Having found that detention under § 1226(c) is inapplicable to Rodas Trejo, the Court will now address the revocation of her OREC under § 1226(b) and the propriety of her detention under § 1226(a).

**2. Revocation of OREC and Detention Under 8 U.S.C. § 1226(b)**

Respondents rely on 8 U.S.C. § 1226(b) to justify ICE's decision to revoke Rodas Trejo's OREC and detain her. (Resp. at 9–10). Under § 1226(b), "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).[7] The Government argues that ICE enjoys broad authority under § 1226(b) to revoke noncitizens' release and had the authority to arrest Rodas Trejo for an alleged OREC violation, or could have done so even in the absence of any violation. (Resp. at 9–10).

[7] The Court finds that Rodas Trejo's "release on [her] own recognizance is a form of conditional parole under 8 U.S.C. § 1226(a)(2)(B)," Singh v. Noem, 824 F.Supp.3d 1197, 1212 (D.N.M. 2026), and neither Party suggests otherwise, (see generally Resp.; see Reply at 6, ECF No. 9).

Rodas Trejo raises three challenges to Respondents' invocation of § 1226(b). First, she argues that Respondents contravened the plain language of § 1226(b) by rearresting her under a new warrant issued on September 28, 2026, when § 1226(b) specifies that ICE may "rearrest [an] alien under the original warrant." 8 U.S.C. § 1226(b) (emphasis added); (Reply at 6–7). Second, Rodas Trejo disputes Respondents' characterization of her nolle prossed theft charge as a violation of her OREC. (Reply at 7–8). And third, she alleges that Respondents' authority to revoke a prior release is necessarily bound by the Due Process clause, and the revocation of her OREC without further process is not constitutionally permissible. (Id. at 8–10).

**a. Alleged Violation of OREC**

As a preliminary matter, the Court will address Respondents' attempt to justify Rodas Trejo's re-detention by alleging that she violated her OREC. (Resp. at 9–10). A hallmark of this country's criminal justice system is that an individual accused of a crime is innocent until proven guilty. See Betterman v. Montana, 578 U.S. 437, 441 (2016). Respondents' conclusive statement that Rodas Trejo "committed a crime of theft; or at minimum was associated with criminal activity regarding a theft," based solely on charges that the State's Attorney nolle prossed, is patently incorrect. (Resp. at 10).

It is not within the authority of Respondents, or even this Court, to conclude that any crime was committed, given the fact that theft offenses have a mens rea element that must be proven. See Md. Code, Crim. Law § 7-104 (Maryland theft statute requiring that a person "intends to deprive the owner of the property," "willfully or knowingly use, conceals, or abandons the property in a manner that deprives the owner of the property,"

or "uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property"). For Rodas Trejo's inadvertent use of her former employer's credit card to constitute criminal theft, or to be a crime at all, it would have to be found that she had the necessary mens rea.

There is no evidence before the Court that indicates that Rodas Trejo intentionally used her former employer's credit card, nor is there any evidence that indicates that any prosecutor or law enforcement official ever believed that she possessed the necessary mens rea to commit theft under § 7-104. Important here is the fact that no prosecutor or law enforcement officer filed charges against Rodas Trejo; rather, her former employer, Rasheed Haroon, filed a Statement of Charges against her. (Pet. ¶ 19; State Ct. Docket at 1). The State's Attorney entered a nolle prosequi, purportedly "as a result of the State's Attorney recognizing that the facts of the case did not rise to the level of a criminal offense." (Pet. ¶ 19; see Def. Trial Summ.). The fact that the State's Attorney immediately dismissed these charges only increases the likelihood that these charges were, in fact, meritless.[8]

It is improper for Respondents to rely on nolle prossed charges as evidence that a crime was committed. It offends due process to assert that those same dismissed charges

---

[8] It is entirely possible that the only unlawful act that may have been committed here is that of malicious prosecution by Rasheed Haroon. See Peters v. City of Mount Rainier, No. GJH-14-955, 2014 WL 4855032, at *11 (D.Md. Sep. 29, 2014) ("Typically, when a prosecutor nol[le] prosses all of the charges in a criminal indictment, and does so with the intent of formally abandoning the entire criminal proceeding, the proceeding has terminated in the plaintiff's favor and a cause of action for malicious prosecution arises at that time.").

justify revocation of Rodas Trejo's release on the stated basis that she conclusively "committed a crime of theft; or at minimum was associated with criminal activity regarding a theft," (Resp. at 10), particularly given the fact that both Respondents and Respondents' counsel received notice of the charges' dismissal hours before they officially revoked her release, (Reply at 3). The Court therefore rejects Respondents' argument that these dismissed charges justified the revocation of Rodas Trejo's release.

**b. Section 1226(b) Revocation Authority**

Under § 1226(b), DHS "may revoke a bond or parole authorized under [§ 1226(a)], rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). Rodas Trejo's release from immigration custody on an OREC is considered a form of conditional parole from custody that is subject to this statute. See Lopez v. Noem, No. GLR-25-3662, 2025 WL 3496195, at *3 (D.Md. Dec. 5, 2025). The question for the Court is whether this power is truly limitless, or if there must be limitations on this authority to guarantee that revocation comports with due process.

The protections of the Due Process Clause extend to noncitizens. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Reno v. Flores, 507 U.S. 292, 306 (1993). Although "Congress regularly makes rules that would be unacceptable if applied to citizens," Mathews v. Diaz, 426 U.S. 67, 80 (1976), "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law,

call for the most searching review," Velasco Lopez v. Decker, 978 F.3d 842, 850 (2d Cir. 2020).

The "essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." Mathews v. Eldridge, 424 U.S. 319, 348 (1976) (citation modified). Thus, even where not explicitly required by statute or regulation, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Id. at 332. In Mathews, the Supreme Court outlined three factors that are relevant to determine whether a procedure complies with due process: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

First, the private interest factor is easily determined, as the interest at issue here is Rodas Trejo's liberty interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Many courts, including this one, have concluded that when U.S. Customs and Border Protection "release[s] [an individual] on an OREC after determining that she was not a danger nor a flight risk, it confer[s] a conditional liberty interest that may not be withdrawn without constitutionally sufficient

process." R.R.T. v. Mullin, No. 2:26-CV-03856-VBF-AYP, 2026 WL 1229181, at *2 (C.D.Cal. May 1, 2026) (first citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972); and then citing Ortega v. Bonnar, 415 F.Supp.3d 963, 969 (N.D.Cal. 2019)); see also Lopez, 2025 WL 3496195, at *4; J.S.H.M v. Wofford, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *14 (E.D.Cal. Oct. 16, 2025); Kerry-Juma v. Noem, No. SAG-25-4000, 2025 WL 3537525, at *2 (D.Md. Dec. 10, 2025). This determination is consistent with Board of Immigration Appeals precedent, which "recognizes that a prior release should not be revoked absent materially changed circumstances." R.R.T., 2026 WL 1229181, at *2 (citing Matter of Sugay, 17 I.&N. Dec. 637, 640 (BIA 1981)); Saravia v. Sessions, 280 F.Supp.3d 1168, 1194–98 (N.D.Cal. 2017), aff'd sub nom., Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018)).

Here, Rodas Trejo entered the United States as a minor with her mother in 2017. (Pet. ¶ 17). She was released from immigration detention more than nine years ago and has since created strong community and family ties, including with her two U.S.-citizen children. (Id. ¶¶ 18, 39, 45; OREC at 1). On these facts, the Court concludes that Rodas Trejo has a liberty interest in remaining out of immigration custody. See Ortega, 415 F.Supp.3d at 966, 968 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."); S.D.B.B. v. Johnson, No. 1:25-CV-882, 2025 WL 2845170, at *9 (M.D.N.C. Oct. 7, 2025) (finding petitioner had private interest in remaining free from detention).

Second, as to the risk of erroneous deprivation factor, there is an incredible risk of erroneous deprivation of Rodas Trejo's liberty where Respondents claim that they need not have or provide a justification for the revocation of her release. (Resp. at 9). This risk is compounded given the fact that it has been executive practice for decades to require materially changed circumstances before re-detaining a noncitizen who was previously released from immigration custody. See Saravia, 280 F.Supp.3d at 1194–98; R.R.T., 2026 WL 1229181, at *2; Matter of Sugay, 17 I.&N. Dec. at 640. Noncitizens seeking release from immigration custody must demonstrate to the satisfaction of immigration officials that they are not a danger to the community or a flight risk, so any changed circumstances must materially impact the determination of one or both factors. Lopez, 2025 WL 3496195, at *3 (citing Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007)); see also Kerry-Juma, 2025 WL 3537525, at *2. At minimum, there must be "an individualized determination that release is no longer appropriate under the terms of that prior release." Betancourth v. Tate, 822 F.Supp.3d 762, 768 (S.D.Tex. 2026).

There is no indication in the record that Rodas Trejo was provided with any process at the time that Respondents performed the Notice of Custody Determination. The only warrant in the record appears to have been authorized contemporaneously with the Notice of Custody Determination, hours after Rodas Trejo was detained. (Warrant; Notice Custody Determination; Pet. ¶ 2).[9] There is no I-213 (Record of Deportable/Inadmissible

[9] Although the Warrant seems to have been drafted on September 28, 2026, it was not digitally signed by an authorized officer until September 29, 2026. (Warrant, ECF No. 8-3).

Alien) or any other record of an individualized determination by Respondents, and the Notice of Custody Determination fails to identify even a conclusory rationale for Rodas Trejo's re-detention. (See generally Notice Custody Determination). See, e.g., Michilashvili v. Jamison, No. CV 26-7686, 2026 WL 3182160, at *3 (E.D.Pa. Oct. 23, 2026) (finding due process violation where ICE made no "individualized custody determination taking into account the considerations of dangerousness and flight risk").

Third, as to the final government interest factor, the Court finds that Respondents' interest in re-detaining an individual who was already found to not present a danger to the community or a flight risk is exceptionally low. Respondents do not have a lawful interest in detaining every noncitizen throughout immigration proceedings—their interest is solely in the limited purpose of protecting the safety of the community and ensuring that noncitizens will appear for their immigration proceedings. See Demore, 538 U.S. at 514. Where a determination has already been made that an individual is not a risk of either, there is no basis for revocation of that individual's release absent materially changed circumstances, and Respondents have no interest in being permitted to do so.

The Court therefore finds that the revocation of Rodas Trejo's OREC was improper, as Respondents improperly relied on nolle prossed charges to do so and have no authority to revoke release absent materially changed circumstances. The Court, therefore, will order Respondents to immediately release Rodas Trejo and restore her OREC, with no conditions and restraints on her liberty other than those in her 2017 OREC.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Rodas Trejo's Petition for Writ of Habeas Corpus (ECF No. 1) and will order her immediate release. A separate Order follows.

Entered this 5th day of November, 2026.

/s/
George L. Russell, III
Chief United States District Judge